United States District Court
Southern District of Texas
**ENTERED**
March 06, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Viola Ervette Edwards, § § § *Plaintiff,* § § v. § § Kilolo Kijakazi, § Acting Commissioner of Social § Security, § § *Defendant.* § | Civil Action No. 4:22-cv-00520 |

## MEMORANDUM AND RECOMMENDATION

This appeal from an administrative ruling denying a request for social security benefits was referred to the undersigned judge. Dkt. 9. After carefully considering the parties' briefs, Dkts. 13-16, the record, Dkt. 7, and the applicable law, it is recommended that Plaintiff Viola Ervette Edwards's Motion for Summary Judgment (Dkt. 12) be granted and Defendant Kilolo Kijakazi's Motion for Summary Judgment be denied (Dkt. 15).

## Background

Edwards filed for social security benefits under Title II and XVI, claiming a disability onset date of December 31, 2016. R.20, 349-59. Her application claimed she suffered from bipolar disorder, depression, high blood pressure, diabetic, cysts in both feet, rheumatoid arthritis in both hands, high

cholesterol, and plantar formatosis. R.399. Before filing for benefits, Edwards worked as a home health aide from 1997 to 2011 and as a cashier in the food service industry from 2011 to 2016. R.400.

Edwards's claim was denied initially and upon reconsideration. R.20. In December 2020, the administrative law judge (ALJ) held a hearing where Edwards did not appear because she was in jail. R.39-46. The hearing was adjourned and rescheduled for May 21, 2021, when the ALJ heard testimony from Edwards and an impartial vocational expert (VE). R.47-94.

At the hearing, Edwards's counsel insisted that her history of cocaine abuse was immaterial to the disability determination because Edwards had been sober since January 2021. R.58. The ALJ proceeded to question Edwards extensively about her use. R.61-65. Edwards testified both that she had "been clean for a while," roughly since 2019, R.61-62, but then admitted using cocaine in December 2020, R.63-64. She testified that she had not taken any illicit drugs since January 2021. R.65.

Aside from her substance abuses, Edwards testified that she suffered from hallucinations and felt like she was "in the company of too many people." R.60. She claimed that she heard voices telling her to do things like shave her hair (which she did). *Id.* She also testified that she did not want to work, despite having a long work history, because she didn't "want to be around" anybody and was afraid she would hurt someone due to the voices. R.61. But

Edwards testified that she could be around her grandchildren because she did not perceive them to be "a threat" to her. R.65. Edwards also testified briefly about her involuntary hospitalization due to a mental health crisis, but she could not recall when it occurred. R.78-79.

After the hearing, the ALJ issued an adverse decision, denying Edwards benefits. *See* R.20-31. At step one of the analysis, the ALJ found that Edwards met the insured status requirements under the Social Security Act. R.2. At step two, she found that Edwards suffered severe impairments: anxiety/depression, degenerative disc disease of the cervical spine, angioedema, right knee disorder, and vision disorder. R.23. The ALJ addressed Edwards's substance abuse at this step, finding:

> The medical record shows the claimant has a history of substance abuse with a recent diagnosis reflecting the same. However, as detailed fully below, the claimant's mental status examinations and general mental functioning has remained intact with the limitations found below. As such, *the undersigned concludes her substance abuse is not material to the finding of disability*, no (sic) is it severe per the regulations *given her residual mental functioning as evidenced by her treatment* outlined below.

R.23 (emphasis added). The ALJ thus proceeded to step three, where she found that Edwards's impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then formulated Edwards's residual functional capacity (RFC), finding that Edwards was capable of medium work, with certain limitations. The mental limitations, which are at issue on appeal, are:

> She can remember and follow simple instructions. The claimant can perform the tasks assigned, but not at a production rate pace. *However, she can meet the end of day work goals.* The claimant can have *occasional contact* with co-workers, supervisors, and the general public. She can occasionally adapt to changes in the workplace.

R.25 (emphasis added). The ALJ based this determination partly on the fact that Edwards's healthcare was "brief and sporadic since the alleged onset of disability." R.26. Indicative of the sparse evidence, the ALJ identified mental health records from September and October 2017 and early 2021. R.25-26.

Based on this RFC, the ALJ relied on the VE's testimony to find that Edwards could hold jobs that were available in the national economy, including work as a day worker, general laborer, and table busser. R.30. She found Edwards not disabled as a result. R.29-31.

The Appeals Council denied review, R.4-7, which rendered the ALJ's decision final under 42 U.S.C. § 405(g).

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal

4

standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a scintilla, but it need not be a preponderance.'" *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe

5

impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

## II. The ALJ's determination was not supported by substantial evidence.

Edwards's motion raises only one issue: whether the ALJ erred in formulating her RFC because she did not "properly evaluate the opinion evidence" and because the RFC was not otherwise supported by substantial evidence. Dkt. 13 at 5. Specifically, Edwards argues that the ALJ failed to

6

adequately explain why she deemed unpersuasive the opinions of the psychiatric consultative examiner, Dr. Richard Hardaway. *Id.* at 6-14. Edwards argues that she would have been found disabled but-for the ALJ's legal error because her RFC should have included the additional mental limitations identified by Dr. Hardaway. *Id.* at 17.

As explained below, the Court agrees that the ALJ's analysis and explanation are legally deficient and that these deficiencies prejudiced Edwards's interests. Remand is therefore warranted.

### A. The RFC was not supported by substantial evidence.

#### i. The ALJ failed to explain her persuasiveness finding for Dr. Hardaway.

Edwards argues that the ALJ failed to comply with 20 C.F.R. § 404.1520c and § 416.920c, which require ALJs to provide an "adequate discussion" of at least how supportable or consistent a medical opinion is with the record evidence. *Id.* at 7-14. The Court agrees.

For claims filed on or after March 27, 2017, the Social Security Administration requires ALJs to explain how they evaluate a medical opinion's persuasiveness. *See Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c). "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's

7

specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Id.* (citing and quoting 20 C.F.R. § 404.1520c(c)). Among those factors, the most important are supportability and consistency, *id.* § 404.1520c(b)(2), and a "sufficient explanation of the supportability and consistency of medical opinions is ... a critical portion of the analysis," *Pearson v. Comm'r of Soc. Sec.*, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted*, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021). Because they are the two most important factors, regulations state that an ALJ "*will* explain how we considered supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

When analyzing the sufficiency of an ALJ's explanation, courts have required that "there be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (collecting cases). A generic statement or summary that a medical provider's opinion is inconsistent with the record as a whole does not suffice because "the Court cannot undertake a meaningful review of the ALJ's consideration" of the medical opinions." *Id.* at *7; *Cooley v. Comm'r of Soc. Sec.*, 2021 WL 4221620, at *7 (S.D. Miss. Sept. 15, 2021) (same). Without guidance from the ALJ, the reviewing court can only speculate about her reasons for finding an opinion unpersuasive. *Ramirez v. Saul*, 2021 WL 2269473, at *6 (W.D. Tex. June 3,

8

2021); *Pearson*, 2021 WL 3708047, at *5; *Bjorklund v. Kijakazi*, 2022 WL 2392315, at *4 (S.D. Tex. July 1, 2022), *report and recommendation adopted*, 2022 WL 2905471, at *4-5 (S.D. Tex. July 22, 2022).

Dr. Hardaway was the psychiatric consultative examiner engaged to evaluate Edwards after she filed for benefits. *See* R.972-77. He conducted several tests and recorded his observations, many of which were accurately summarized by the ALJ. R.27-28. The ALJ, however, appears to have rejected Dr. Hardaway's opinions on Edwards's functional capacity, as they were not incorporated into the RFC. Specifically, Dr. Hardaway opined that Edwards "is unlikely to have the ability to sustain concentration and persist in work-related activity at a reasonable pace due to depression and anxiety secondary to cocaine abuse withdrawal" and that it "appears unlikely that she could maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting." R.977.

The ALJ provided only an incomplete, disjointed explanation as to why she did not find Dr. Hardaway entirely persuasive:

> While the diagnoses seem to be consistent with the evidence of record, the level of limitations are somewhat inconsistent with the direct observations and exam results and with the *other evidence of record*. Further, both of the diagnoses were *noted to be secondary to drug abuse withdrawal*. Moreover, the evidence available at the hearing level *supports no*

9

> *more than moderate limitations in three of the B criteria,* with the undersigned affording a marked limitation in the claimant's ability to understand, remember, and apply information out of an abundance of caution. Accordingly, the evidence available at the hearing level is *consistent with the residual functional capacity set forth herein.*

R.28 (emphasis added).

On its face, the ALJ's opinion does not discuss the supportability of Dr. Hardaway's opinions which, unlike the latter three factors, *must* be provided. *See* 20 C.F.R. § 404.1520c(b)(2). Rather, she concludes that the "evidence available at the hearing" supports her other findings in step three—that is, her evaluation of whether Edwards met any listed impairment's paragraph B criteria.[1] R.28. This statement is entirely separate from whether *Dr. Hardaway's* opinions are supported by the record.

---

[1] The ALJ's reference to the earlier paragraph B analysis is dubious because even her opinion acknowledges: "The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 ...." R.24. Regardless, ALJ's discussion of paragraph B criteria is no more thorough in identifying evidence that does (or does not) support Dr. Hardaway's opinions. Citing no specific pages or documents in the record, the ALJ determined that Edwards was either moderately or markedly limited. She did so despite noting that "there is essentially no evidence" or "there is little evidence to suggest that she has experienced any cognitive limitations." R.24. She also explained her first finding as being made "in the abundance of all possible caution"—rather than based on specific evidence. *Id.* SSR 86-8, 1986 WL 68636, at *8 (1986) ("Reasonable inferences may be drawn, but presumptions, speculations, and suppositions should not be substituted for evidence."), *superseded on other grounds by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (superseding guidelines only with respect to finding minors disabled).

10

With respect to consistency, the opinion merely states that Dr. Hardaway's opinion is "inconsistent with the direct observations and exam results and with the other evidence of record." R.28. She does not identify "other evidence" that undermines Dr. Hardaway's opinions, let alone the opinions about Edwards's mental impairments that the RFC did not include.

A reference to the entire record is precisely the scant, "general assertion" that disregards the ALJ's affirmative duty to "*explain* how [the SSA] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Such bare, conclusory explanations cannot satisfy Section 404.1520c. *See, e.g.*, *Shugart*, 2022 WL 912777, at *4 (ALJ's lack of "meaningful discussion of the consistency and supportability of" a medical opinion was error); *cf. Kneeland*, 850 F.3d at 761 ("[C]ursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion.").

Further, the ALJ's final statement that the record is "consistent with the RFC" is a non sequitur that does not supply the requisite "logic bridge." An ALJ's RFC indeed must be consistent with the record, but that does not relieve the ALJ of the obligation to make and explain the specific persuasiveness finding for medical opinions that could inform the limitations reflected in the RFC. To do that, the ALJ needed to explain whether Dr. Hardaway's opinions were consistent "with *the evidence* from other medical sources and nonmedical

11

sources in the claim." *Id.* § 404.1520(c)(2) (emphasis added). By failing to provide the requisite explanation, the ALJ failed to comply with Section 404.1520c. This inadequate discussion constitutes legal error.

### ii. The ALJ cannot be credited with any analysis that involves Edwards's substance abuse.

As a related matter, the Court notes that the ALJ's discussion of Dr. Hardaway's persuasiveness identifies only one piece of "contradictory" evidence: the fact that Edwards's diagnosis of depressive and anxiety disorders are "secondary to drug abuse withdrawal." R.28. Although Edwards did not address this portion of the ALJ's analysis, her challenge to the ALJ's rejection of Dr. Hardaway's opinion nonetheless requires the Court to examine whether Edwards's prior drug use lends support to the ALJ's finding. It does not.

While there is evidence of Edwards's cocaine use—and, indeed, Edwards admitted to that use—drug and alcohol abuse "becomes an issue in a social security claim for benefits only *after* the ALJ finds the claimant disabled." *Pena v. Colvin*, 2014 WL 12540442, at *3 (S.D. Tex. June 12, 2014) (emphasis added) (citing 20 C.F.R. § 416.935(a)). But if a claimant was not found disabled, repeated consideration of her drug and alcohol use is error that warrants remand. *Id.* at *4-6 (analyzing decisions concluding that ALJs erred by repeatedly and unnecessarily referencing the claimant's alcohol or drug use without first making a disability finding); *Riley v. Kijakazi*, 2022 WL 4230247,

at *9 (W.D. La. Aug. 29, 2022) (same), *report and recommendation adopted*, 2022 WL 4227881 (W.D. La. Sept. 13, 2022).

Because Edwards was not found disabled, the ALJ's references to her substance abuse were improper.[2] *Id.* Edwards's drug-related diagnoses therefore cannot supply the basis for the ALJ's review of the evidence when determining the persuasiveness of Dr. Hardaway's opinion.

### iii. The ALJ and Commissioner's evidentiary cites do not reflect substantial evidence in the record.

The Commissioner's after-the-fact attempt to bolster the RFC analysis is no more availing. The Commissioner cites a handful of mental health records that allegedly constitute substantial evidence supporting the RFC and the ALJ's treatment of Dr. Hardaway's opinions. *See* Dkt. 14 at 6-7. The Court is not persuaded.

For example, the Commissioner cites a September 9, 2017 record where Edwards was purportedly "normal" in her mental status examination. *Id.* (citing R.553). No treatment narrative says that; rather, the Commissioner appears to reference daily checklist forms that did not specify the impairments

---

[2] In addition to asking multiple questions about her substance use at the hearing, R.61-65, the ALJ raised Edwards's cocaine use several times in her opinion, *see* R.23, 25, 26, 28. This includes her premature finding, at step two, that Edwards's substance use was "immaterial to the finding of disability ...." R.23; *Riley*, 2022 WL 4230247, at *9 ("[B]efore determining whether [drug and alcohol abuse] is a contributing factor material to the determination of disability, the Commissioner first must find that the claimant is disabled.").

or symptoms that Edwards alleges. But at that time, Edwards was involuntarily hospitalized for her mental health and under constant observation because of suicidal ideations and auditory verbal hallucinations, among other issues. *See* R.558 (describing her in-patient treatment plan). Another record from the same day indicated that Edwards is "angry and cranky" and "has been hearing voices and is seeing things." R.550-51.

The Commissioner also cites a September 11, 2017 record—also during Edwards's involuntary hospitalization—arguing that Edwards deemed "normal" in the checklist. Dkt. 14 at 6 (R.569). But the provider's narrative states that Edwards was making "minimal eye contact" and "appeared drowsy and confused when interacting with staff." R.568. She was also exhibiting signs of delayed speech and was "minimally willing to engage in 1:1 conversation regarding her current mood and mental status." *Id.*

Finally, the Commissioner relies on two records from the Spring of 2021, which purportedly reflect Edwards's "normal" mental evaluation. Dkt. 14 at 7 (citing R.1545-56, 1566-67). Again, these records are checklists that do not indicate any symptoms of or improvement (or regression) in Edwards's mental health—especially as they were filled out during Edwards's visits to address other conditions, namely hypertension, diabetes, and foot pain. R.1542, 62.

Moreover, in January and May 2021, Edwards continued to report symptoms of depression, poor concentration, mood swings, and hallucinations.

14

R.1579-80. Those symptoms were severe enough that her provider increased her dosages of lithium and Seroquel (an anti-psychotic) because of her "insufficient improvement." R.1587. Accordingly, the ALJ's explanation of Dr. Hardaway's opinions is insufficient, and her decision to discount his suggested mental limitations is not otherwise supported by substantial evidence.

### B. The ALJ's errors were prejudicial.

Having determined that the ALJ erred, the remaining question is whether the ALJ's errors were harmless. *See generally Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (analyzing an ALJ's failure to provide an explanation for a different step-three finding). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Shugart*, 2022 WL 912777, at *4 (quoting *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006)). That is not so here.

Edwards argues that the ALJ's failure to consider Dr. Hardaway's opinions more persuasive resulted in an inaccurate RFC finding; in turn, the ALJ used this RFC to conclude that Edwards could perform available jobs in the national market. Dkt. 13 at 17. The Court agrees that the ALJ's legal error was prejudicial. Dr. Hardaway's opinion indicated that Edwards would struggle to sustain concentration or maintain effective social interaction. R.977. The ALJ nonetheless included only minor mental limitations in the RFC. R.25 (finding Edwards can complete end of day work goals and have

15

"occasional" contact with others). As described *supra*, the ALJ's RFC determination failed to comply with Section 404.1520c. *See supra* Part II.A.i-ii. Had the ALJ applied the proper framework for analysis, she may have reached a different RFC determination that included more severe mental limitations detailed in Dr. Hardaway's opinions.

The RFC's use in step four makes it more "conceivable that the ALJ could make a different administrative decision upon further review." *Shugart*, 2022 WL 912777, at *4. Edwards argues that the vocational expert's testimony would have been different, because the ALJ would have asked him different hypotheticals about her capabilities which, in turn, may have resulted in a finding that she cannot maintain or perform work available in the national economy. Dkt. 13 at 17. The Court agrees.[3] The legal error was prejudicial because it "clearly implicates [Edwards's] substantive rights." *Cooley*, 2021 WL 4221620, at *8. The proper remedy is to remand for further proceedings.

## Recommendation

Accordingly, the Court **RECOMMENDS** that Edwards's Motion for Summary Judgment (Dkt. 12) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 14) be **DENIED**, that the decision of the Commissioner of the Social Security Administration be **VACATED,** and the

---

[3] Other adjustments to the RFC and corresponding vocational expert testimony may be necessary after the ALJ re-evaluates or explains Dr. Hardaway's persuasiveness.

matter be **REMANDED** for further administrative proceedings consistent with this Memorandum and Recommendation.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on March 6, 2023 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge